1 lingrule29  **FILED**
DISTRICT COURT OF GUAM

2 LEONARDO M. RAPADAS
United States Attorney
3 KARON V. JOHNSON
Assistant U.S. Attorney
4 Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
5 Hagatna, Guam 96910
Telephone: (671) 472-7332
6 Telecopier: (671) 472-7334

AUG 2 8 2007 

**JEANNE G. QUINATA**
**Clerk of Court**

7 Attorneys for the United States of America

## IN THE UNITED STATES DISTRICT COURT
## FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL CASE NO. 05-00081 |
| Plaintiff, | UNITED STATES RESPONSE TO DEFENDANT'S RULE 29 MOTION |
| vs. | |
| HUI FANG LING, | |
| Defendant. | |

Federal Rule of Criminal Procedure 29(c) allows the defendant to move for a judgment of acquittal after the jury has returned a verdict of guilty. The standard is whether, viewing the evidence in the light most favorable to the government, the jury could have found the defendant guilty beyond a reasonable doubt. United States v. Rojas, 554 F.2d 938 (9th Cir. 1977). This has also been phrased in slightly different terms, whether "any" rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Bahena-Cardenas, 70 F.3d 1071, 1072-73 )(9th Cir. 1995).

Defendant presents the same argument she made to the jury, which the jury rejected. Asylum Officer Patrick Lujan testified that there were two important reasons for asking an applicant when/how often he had entered the United States. One is to establish that the

-1-

application was being filed within one year of arrival. The other is designed to flag an important issue for investigation: why, if a person had entered on a prior occasion, he had not filed for asylum or established credible fear at that first entry. Mr. Lujan further testified that whether a person had a criminal conviction was important to assessing their eligibility for asylum.

The government caused defendant's Chinese Affidavit to be reviewed by an independent interpreter, to determine whether there was any significant differences between the two translations, or any significant omissions in the original Chinese-to-English translation. Although there are minor differences between the two translations, they are just that–minor. Thus, though defendant indicated "yes" for whether she or any member of her family had ever committed any crime, and/or been arrested, charged, convicted or sentenced for any crimes in the United States, there is no dispute that her Affidavit, which she referenced in answering this question, is completely silent on her 2004 conviction.

Defendant's argument about a typographical error was premised on the assumption that defendant knew the legal distinction in U.S. immigration laws between "attempted entry" and actually landing on U.S. soil. She asked the jury to infer that she deliberately failed to report the 2003 incident, because she did not actually "enter" Guam. She further asked the jury to infer she really intended to report the 2004 and 2005 landings, because those were the actual "entries," and just neglected to notice that "03" should have read "04."

The jury had sufficient evidence to reject that argument and convict her. First, Exhibit 3 reflected that her 2004 conviction was for "Improper Entry by an Alien: Subsequent Commission." The jury knew that after her arrest for the first entry in 2003, she violated her conditions of release, landed at the Mangilao Golf Course and was returned pursuant to an arrest warrant issued by Judge Munson, whereupon she pled guilty to improper entry as a second offense. Thus as far as defendant knew, her 2003 crime was her first illegal entry, and her 2004 crime was her second illegal entry. The jury knew, as well, that she was sentenced to one year supervised release, which expired August 11, 2005, and she did not attempt to enter Guam again

until she was certain that Judge Munson could no longer bring her back to Saipan. The jury knew she had been interviewed for credible fear in 2004, and had failed to state any reason sufficient to support an asylum claim.

In short, given the totality of defendant's circumstances, the jury was entitled to find that defendant believed that "entries" meant her 2003, 2004 and 2005 offenses, that she believed she had been convicted twice for illegal entry before coming to Guam in 2005, and that she knew her prior credible fear interview was weak. If she had any hope of gaining asylum on a forced abortion claim, she would have to claim she actually underwent such a procedure, and hope that no one would notice that she had failed to make such a claim in 2004. The jury could find that, just as her 2005 entry was carefully orchestrated to avoid any further interference by the CNMI District Court, her answers to the asylum application were intentionally crafted to conceal her 2004 entry, her 2004 conviction, and her 2004 credible fear interview.

Defendant's conviction on Count II should stand.

Respectfully submitted this 28th day of August, 2007

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: /s/ Karon V. Johnson
KARON V. JOHNSON
Assistant U.S. Attorney

-3-